917 F.2d 1104
 59 USLW 2302, 21 Bankr.Ct.Dec. 52, Bankr.
L. Rep. P 73,673
 Robert E. LEE; Fayette L. Lee; Edward C. Bethke; Eileen
G. Bethke; and Dianna Hunter on behalf of
themselves and all others similarly
situated, Appellants,
v.
Clayton YEUTTER, Secretary of Agriculture, and Neal Sox
Johnson, Acting Administrator of the Farmers Home
Administration, Appellees.
 No. 89-5604MN.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Sept. 12, 1990.
Decided Oct. 29, 1990.
 
 Randi Ilyse Roth, St. Paul, Minn., for appellants.
 Robert M. Loeb, of the Dept. of Justice, Washington, D.C., for appellees.
 Before WOLLMAN, Circuit Judge, FLOYD R. GIBSON, Senior Circuit Judge, and MAGILL, Circuit Judge.
 FLOYD R. GIBSON, Senior Circuit Judge.
 
 
 1
 At issue is a challenge to regulations promulgated by the Secretary of Agriculture (the Secretary) that prevent farmers who have had their Farmers Home Administration (FmHA) debt discharged in a Chapter 7 bankruptcy from taking advantage of certain debt restructuring programs. We agree with the district court's[1] ruling that the regulations are permissible and hence we affirm.
 
 I. BACKGROUND
 
 2
 This controversy involves the debt restructuring programs overhauled by Congress as part of the Agricultural Credit Act of 1987, Pub.L. No. 100-233, 101 Stat. 1568-1718 (the Act).[2] There are two types of programs. The first category of programs are referred to as "primary loan service programs." These programs are designed to present the Secretary with alternatives that cost less than outright foreclosure of a farmer's land and "to ensure that borrowers are able to continue farming ... operations." 7 U.S.C. Sec. 2001(a) (1988). The primary loan programs allow the Secretary to consolidate, reamortize, reschedule, defer or decrease the amount of loans or reduce the interest rate on loans. See id. Sec. 1991(b)(3) (1988). The Secretary considers a detailed list of factors when determining which, if any, of these programs should be made available to any particular farmer. Id. Sec. 2001(b)-(c) (1988); 7 C.F.R. Secs. 1951.902, 1951.909 (1990). The second category of programs, referred to as "preservation loan service programs," allows farmers to leaseback or buyback their farms or simply retain their homesteads. 7 U.S.C. Sec. 1991(b)(4) (1988).
 
 
 3
 The primary loan servicing programs are available only to borrowers, a term defined by Congress as "any farm borrower who has outstanding obligations to the Secretary under any farmer program loan, without regard to whether the loan has been accelerated, but does not include any farm borrower all of whose loans and accounts have been foreclosed on or liquidated, voluntarily or otherwise." 7 U.S.C. Sec. 1991(b)(1) (1988). The Secretary is required to send notice of the loan servicing programs to all borrowers who are at least 180 days delinquent in their payments of principal or interest, id. Sec. 1981d, and he has adopted regulations to that effect. These regulations have two separate provisions for farmers who encounter bankruptcy. Farmers who had bankruptcies pending on or after January 6, 1988, are sent a notice indicating that they will not be eligible for the loan servicing programs unless they move to modify the automatic stay to allow servicing and they reaffirm their debt. 7 C.F.R. Secs. 1951.907(c), 1962.47(a)(3)(ii) (1990). Farmers who received a discharge under Chapter 7 prior to January 6, 1988, are not sent any notices unless they reaffirmed their FmHA debt prior to the grant of discharge. Id. Sec. 1951.907(d).[3] The Secretary reasoned that if a farmer received a discharge of his FmHA loan, he no longer owed an outstanding "personal obligation" to the Secretary and thus could not be a borrower within the meaning of the Act. 53 Fed.Reg. 35,652 (1988).
 
 
 4
 The plaintiffs are farmers who filed Chapter 7 bankruptcies and received discharges of their debts--including their FmHA loans--yet continue to retain the property that secured their debt to the Secretary. The plaintiffs (hereinafter "the farmers") did not receive a Notice of Loan Servicing from FmHA, and FmHA will not consider them for any of the primary loan programs. The farmers filed suit in federal court on behalf of themselves and all similarly situated Minnesota farmers, alleging that the Secretary's regulation is improper because it prevents them from being able to apply for the primary loan servicing programs. Specifically, the farmers claim that they fit within Congress' definition of borrowers and therefore must be afforded the opportunity to apply for debt restructuring. Furthermore, by failing to even consider restructuring the farmers' debt, the Secretary fails to heed either purpose of the Act (to assist and aid the farmer in saving his farm) and the Secretary loses the opportunity to save money for the United States (in pursuing the most economic net recovery available).
 
 
 5
 The farmers moved for summary judgment, and the Secretary moved to dismiss. The district court granted the Secretary's motion and denied the farmers' motion as moot.
 
 II. DISCUSSION
 
 6
 Our analysis of the regulation is guided by the Supreme Court's decision in Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). There, the Court explained that a challenge to an agency's regulation presents two issues. The first is whether Congress has directly spoken on the matter in question; if Congress has made its intent clear, that intent must be followed by the agency and the courts. Id. at 842-43, 104 S.Ct. at 2781. Congress' intentions are to be discerned by examining the language, structure, history, and purpose of the statute. Sullivan v. Everhart, --- U.S. ----, 110 S.Ct. 960, 964, 108 L.Ed.2d 72 (1990); Southeastern Community College v. Davis, 442 U.S. 397, 411, 99 S.Ct. 2361, 2369, 60 L.Ed.2d 980 (1979). The second issue arises only if Congress has not directly addressed the matter in question; the issue then becomes whether the agency's regulation "is based on a permissible construction of the statute." Chevron, 467 U.S. at 843, 104 S.Ct. at 2782.
 
 
 7
 As the parties have recognized, the challenged regulation does not depend upon the Secretary's interpretation of the term "borrower."[4] Instead, this case hinges on the Secretary's interpretation of one of the words Congress used to define a borrower; specifically, the term "obligation." The farmers insist that they still owe obligations to the Secretary even though their personal debts have been discharged in bankruptcy. The Secretary is equally insistent that the farmers' personal obligations disappeared once they were discharged. The many arguments presented by both sides demonstrate that there are a myriad of ways in which to define an obligation. However, the critical question is how Congress wanted the word defined. Stated another way, the key is whether Congress wanted debt restructuring to be made available to farmers who had already received a discharge in bankruptcy. Unfortunately, Congress has not explicitly addressed this issue, and our reading of the structure and history of the Act fails to demonstrate a clear indication of Congress' intent.
 
 
 8
 The farmers persuasively argue that the Act's general purposes would be promoted if they were allowed to apply for restructuring. However, a comparison of the primary and secondary programs reveals that Congress created slightly different eligibility requirements for the two. To be eligible for the primary program, one must be a borrower. In contrast, the buyback and leaseback programs are available to "[t]he immediate previous borrower-owner of the acquired property." 7 U.S.C. Sec. 1985(e)(1)(C) (1988). Similarly, the homestead protection program is available to a farmer who, after becoming a borrower "files a petition in bankruptcy that results in the conveyance of the homestead property to the Secretary ... or agrees to voluntarily liquidate or convey such property in whole or in part." Id. Sec. 2000(b)(1)(C). Thus, Congress has specifically allowed for individuals who have discharged their personal obligations to be eligible for the secondary loan programs.[5] Congress' failure to create such an express provision with regard to the primary program indicates that the program is available only to those farmers with enforceable personal obligations.
 
 
 9
 Congress' failure to expressly include discharged debts as a type of obligation is also significant in light of the regulations in existence at the time the Act was passed. Prior to the Act, the Secretary's regulations were vastly similar to those at issue; they required that "[b]orrowers who have filed Chapter 7 bankruptcies ... either dismiss their bankruptcies or ... reaffirm their entire FmHA debt...." 7 C.F.R. Sec. 1962.47(a)(3) (1986); see also 53 Fed.Reg. 35,652 (current regulation "continues FmHA's policy in effect on the date of the 1987 Act which provided servicing relief to Chapter 7 discharged borrowers only if they reaffirms [sic] their debt."). Congress' "failure to change the scheme under which the [Secretary] operated is significant, for a 'congressional failure to revise or repeal the agency's interpretation is persuasive evidence that the interpretation is the one intended by Congress.' " Young v. Community Nutrition Inst., 476 U.S. 974, 983, 106 S.Ct. 2360, 2366, 90 L.Ed.2d 959 (1986) (quoting NLRB v. Bell Aerospace Co., 416 U.S. 267, 275, 94 S.Ct. 1757, 1762, 40 L.Ed.2d 134 (1974)).
 
 
 10
 While these indicia of Congress' intent are useful, they do not unambiguously express its intent.[6] Since Congress has not addressed the precise issue in question, we must uphold the Secretary's regulation if it is a permissible construction of the statute.[7] The Secretary asserts that it is reasonable for him to equate "obligations" with "personal obligations," and we agree. There is nothing unreasonable in the Secretary's determination that a lien on property owned by the farmer is not an obligation. The personal obligation, having been discharged, leaves the Secretary with no recourse against the farmer and the farmer could be reasonably viewed as owing no obligation.
 
 
 11
 This is not to say that the Secretary's interpretation is the only reasonable one. As the district court recognized, a broader interpretation of the word "obligation" could lead to the conclusion "that a Chapter 7 debtor might still qualify for restructuring if the FmHA had not yet foreclosed upon the property securing the discharged loan." Lee v. Yeutter, 106 B.R. 588, 591 (D.Minn.1989). However, the Secretary is free to adopt a narrower interpretation than that sought by the farmers. While the farmers' interpretation may or may not be superior, we cannot exercise our independent judgment and mandate what we believe to be the "better" policy so long as the Secretary's regulation is reasonable and permissible. Chemical Mfrs. Assoc. v. Natural Resources Defense Council, Inc., 470 U.S. 116, 134, 105 S.Ct. 1102, 1112, 84 L.Ed.2d 90 (1985); Chevron, 467 U.S. at 845, 104 S.Ct. at 2783.
 
 III. CONCLUSION
 
 12
 Congress did not specifically indicate whether it meant to include farmers whose personal obligations to the Secretary were discharged in Chapter 7 within the definition of "borrowers." Furthermore, the Secretary's regulation is not unreasonable. Consequently, we affirm the district court's opinion.
 
 
 
 [1]
 The Honorable Edward J. Devitt, Senior United States District Judge for the District of Minnesota
 
 
 [2]
 The relevant portions of the Act have been codified at various non-sequential sections of Chapter 50 of Title VII
 
 
 [3]
 A debt cannot be reaffirmed after a bankruptcy discharge has been granted. 11 U.S.C. Sec. 524(c)(1) (1988)
 
 
 [4]
 Indeed, the Secretary cannot define that term because Congress has already done so. See 7 U.S.C. Sec. 1991(b)(1) (1988)
 
 
 [5]
 During oral argument, counsel for the Secretary conceded that the farmers could be considered for the secondary loan programs
 
 
 [6]
 This is the critical difference between the case at bar and our decision in Hall v. Lyng, 828 F.2d 428 (8th Cir.1987). In Hall, we determined that the agency's regulation was inconsistent with Congress' intent as evinced in both the statute's language and history. Id. at 432-35
 
 
 [7]
 The farmers insist that there is a distinct, intermediate step that requires us to determine whether the regulation "conflict[s] with the legislative history, purpose, or structure of the statute." Appellants' Brief at 19. We disagree. First, as explained earlier in our opinion, an examination of the legislative history is part of the first step of the Chevron analysis. Second, the Supreme Court recently described the analytical framework in terms of a two-step approach. Everhart, 110 S.Ct. at 964. Finally, the farmers' approach invites us to commit the same error as did the lower court in Chevron. In Chevron, the lower court invalidated EPA regulations because, in the court's view, different regulations would have better promoted Congress' policy of remedying air pollution. Chevron, 467 U.S. at 841-42, 104 S.Ct. at 2780-81. Here, the farmers ask us to invalidate the Secretary's regulations because different regulations would better promote Congress' policies of "sav[ing] money and sav[ing] farms." Appellants' Brief at 33. As the Court explained, "[s]uch policy arguments are more properly addressed to legislators or administrators, not to judges." Chevron, 467 U.S. at 864, 104 S.Ct. at 2792